SHARLENE D. LEE, ESQ., SB#274033
  slee@npwlaw.com
ASHLEI M. VARGAS, ESQ., SB#250045
  avargas@npwlaw.com
NEVERS, PALAZZO, PACKARD,
WILDERMUTH & WYNNER, PC
31248 Oak Crest Drive, Suite 200
Westlake Village, California 91361
Telephone: (818) 879-9700
Facsimile: (818) 879-9680

Attorneys for Plaintiff Clay Whitehead

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| CLAY WHITEHEAD, an individual,<br><br>　　　　　Plaintiff,<br><br>　　　　　vs.<br><br>PRESENCELEARNING, INC., a Delaware corporation; BRIAN RICH, an individual; CATALYST INVESTORS, L.P., a Delaware limited partnership, and DOES 1 through 25, inclusive,<br><br>　　　　　Defendants. | CASE NO.<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Discovery Cutoff:　None Set<br>Trial Date:　　　None Set |

Plaintiff Clay Whitehead ("Plaintiff" or "Whitehead") hereby sues defendants PresenceLearning, Inc. ("Presence"), Brian Rich ("Rich"), Catalyst Investors, L.P. ("Catalyst"), and Does 1-10, for claims of fraudulent misrepresentation and negligent misrepresentation, and alleges:

## JURISDICTION AND VENUE

1. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1332(a) which confers subject matter jurisdiction in the United States District Court in all cases in which there is diversity of citizenship and the amount in controversy exceeds the sum of $75,000 exclusive of interest and costs.

2. Venue properly lies in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this District. Additionally, the written agreement at issue in this complaint was made and entered into in

this District, was to be performed in this District, and the effects of the other conduct alleged herein were suffered by Plaintiff in this District.

3. This Court has personal jurisdiction over defendants because defendants' contacts have been sufficient to subject them to personal jurisdiction in this District. Plaintiff is informed and believes that defendants do business in this District.

**DIVISIONAL ASSIGNMENT**

4. Pursuant to Civil L.R. 3-2(c) and 3-2(d), assignment to the San Francisco Division or the Oakland Division is proper because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in Alameda County.

**PARTIES**

5. Plaintiff is now, and at all times herein mentioned was, an individual residing in the City of Piedmont, County of Alameda, State of California. Accordingly, jurisdiction is proper in this Court.

6. Plaintiff is informed and believes and on that basis alleges that defendant Presence is now, and at all times herein mentioned was, a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in the City of New York, County of New York, State of New York. Presence is the former employer of Plaintiff. It does business in Alameda County, California and its services are available for sale in Alameda County, California.

7. Plaintiff is informed and believes and on that basis alleges that defendant Rich is now, and at all times herein mentioned was, an individual residing in the Incorporated Village of Old Westbury, County of Nassau, State of New York. Rich was Chairman of Presence's Board of Directors. Plaintiff is also informed and believes that at all relevant times, Rich did and is currently engaged in business in California. Plaintiff is further informed and believes that Rich is currently a board member of eSUB, Inc., a Delaware corporation with its principal place of business in the City of Sacramento, State of California.

8. Plaintiff is informed and believes and on that basis alleges that defendant Catalyst is now, and at all times herein mentioned was, a limited partnership organized and existing under the laws of the State of Delaware, with its principal place of business in the City of New York, County

of New York. Rich has been the managing partner of Catalyst since April of 2000. Catalyst does business in Alameda County, California and its services are available for sale in Alameda County.

9. Plaintiff is informed and believes and on that basis alleges that at all times relevant herein, defendants and Does 1 through 10, inclusive, were the alter ego of each other and each of them, and that such a unity of interest and ownership existed between them that separate personalities have not in reality existed; and there would be an inequitable result if the acts and omissions at issue in this case were treated as those of any of the defendants and Does 1 through 10 alone. Plaintiff is further informed and believes that the defendants and Does 1 through 10 commingle funds and assets among themselves, that the defendants and Does 1 through 10 have identical, nearly identical or effectively identical owners, that the defendants and Does 1 through 10 have the same offices, directors, and officers and that the defendants and Does 1 through 10 use one another as a mere shell or conduit for the affairs of one another. In addition, Plaintiff is informed and believes that each of the defendants and Does 1 through 10 disregard corporate formalities, shares employees and each transfers assets or properties away and/or creates or shifts liabilities so that each may be left with insufficient capital to meet the needs of each entity's business and its liabilities and without consideration to the detriment of the entity's creditors.

10. Plaintiff does not know the true names and capacities of the defendants sued herein as Does 1 through 10, inclusive, whether individual, corporate, associated, or otherwise, and therefore sues these defendants by such fictitious names. Plaintiff is informed and believes and based thereon alleges that each of the fictitiously named defendants is responsible in some manner for the events and happenings, and caused the damages, alleged herein. Plaintiff will seek leave to amend this Complaint to allege the true names and capacities of such defendants, named herein as Does 1 through 10, when their names and capacities have been ascertained.

11. Plaintiff is informed and believes and on that basis alleges that at all times herein mentioned, each of the defendants was the actual or ostensible duly authorized agent, managing agent, servant, employee, representative, alter ego, co-conspirator, incorporator, officer, director, shareholder, member, parent, brother or sister company or corporation, predecessor and successor-in-interest of each of the remaining co-defendants, and in doing the things hereinafter alleged, was

acting within the course and scope of said agency, employment and office, with the express and/or implied permission, consent, resolution, direction, authorization and ratification of the remaining co-defendants, and each of them.

12.     Each reference in this Complaint to "defendant," "defendants," "co-defendants," "defendant companies," "company defendants," "all persons acting under, in concert with, or for him/her/it", or to any specifically named defendant refers also to all defendants, including those sued or sued and served herein under fictitious names.

## GENERAL ALLEGATIONS

13.     Plaintiff Whitehead was the co-founder of Presence and had been its longtime CEO for nearly a decade prior to his separation from Presence in 2018. This case involves defendants' deliberate and calculated effort, motivated by personal animus, to induce Plaintiff to sign a separation agreement based on Rich's false representation that the separation agreement terms offered to Plaintiff contained the same provisions and offered the same benefits as the separation agreement for the other co-founder of Presence, Jack Lynch.

14.     Plaintiff's growing conflict with Rich, who was on Presence's board of directors in his capacity as the managing partner of Catalyst (a major investor in Presence), culminated with Plaintiff's separation from Presence on or around October 11, 2018. At the time of Plaintiff's separation, Presence terminated Plaintiff's access to its systems, including Plaintiff's company email account, thereby depriving Plaintiff of any direct means of verifying Rich's representations.

15.     The negotiations for Plaintiff's separation agreement were initially conducted by Plaintiff and Rich, in his capacity as a board member for Presence. During the negotiations, the parties agreed that the terms of Mr. Lynch's separation agreement were the minimum floor for the terms of Plaintiff's separation agreement. On October 12, 2018, Rich sent Plaintiff a draft separation agreement. After sending the draft separation agreement, Rich, on behalf of Presence, represented to Plaintiff that the draft agreement had the same terms as the separation agreement that Presence had previously entered into with Presence's other co-founder, Jack Lynch (the "Lynch Agreement"), including a 2-year "extension" to exercise his stock options. These knowingly false representations were material, and induced Plaintiff to eventually sign his separation agreement with Presence with

the 2-year exercise period. Plaintiff would not have subsequently entered into his separation agreement with Presence if he had known that defendants had changed the deal terms from the Lynch Agreement in order to give Plaintiff a five-times shorter option exercise period. This intentional change led to Plaintiff, who served at Presence for a longer period of time and contributed more to Presence than Lynch, receiving $2.5 million, or 25% less than the amount received by Lynch, when Presence consummated a sale.

16. Plaintiff is informed and believes and thereon alleges that defendants chose to suddenly cut off Plaintiff's Presence email access in order to prevent him from accessing copies of the Lynch Agreement contained in Plaintiff's email archives, distract Plaintiff with the issue of email access, and force Plaintiff to rely solely on Rich's representations regarding the terms of the Lynch Agreement.

17. These representations were made by Rich, on behalf of Presence and Catalyst, in multiple telephone conversations between Plaintiff and Rich. These representations were also made in written communications from Rich, as evidenced by the October 30, 2018 and November 6, 2018 email communications from Rich attached hereto as Exhibits A and B. Plaintiff is informed and believes, and thereon alleges, that at the time Rich made these representations on behalf of Presence and Catalyst, he knew that they were false, and that the Lynch Agreement had been intentionally revised to shorten the option exercise period in the draft separation agreement provided to Plaintiff. The only way that the terms of Plaintiff's separation agreement could have been changed is by overt action on the part of defendants, who were the sole parties with access to the Lynch Agreement at the time.

18. Plaintiff is informed and believes and thereon alleges that Rich's actions were driven by his well-known animus towards Plaintiff, stemming from Presence's struggles to continue to grow at a fast pace and from Rich's and Catalyst's own fundraising pressures. Rich and Catalyst were afraid that any performance issues with Presence would endanger Catalyst's ability to raise future funds from their investors.

19. On October 30, 2018, Rich sent an email to Plaintiff regarding Plaintiff's separation agreement terms, stating, "*Our proposal was based upon Jack's agreement, so it is surprising to see

*that you've taken those positions*. I will discuss further with the BOD, however my recommendation to the BOD at this point will be to terminate your employment and offer you a non-negotiable separation agreement that includes 9 months of base salary, 9 months of COBRA and *a 2-year exercise extension largely consistent with what you and the Board agreed to with Jack*" (emphasis added).

20. Similarly, on November 6, 2018, Rich sent an email to Plaintiff regarding Plaintiff's separation agreement terms, stating, "The BOD has already conceded points to you that were not part of Jack's severance agreement which you approved as Board Chairman and Co-Founder."

21. These representations are also evidenced by the November 15, 2018 email communication from Plaintiff to Rich attached hereto as Exhibit C.

22. Based on these representations, Plaintiff executed a separation agreement dated January 25, 2019 (the "Separation Agreement"), which provided for a two-year stock option exercise period.

23. It was not until on or around November 8, 2021 that Plaintiff learned that defendants' representations were false. Plaintiff was shocked to discover that contrary to defendants' representations that Plaintiff's Separation Agreement was "largely consistent" with the Lynch Agreement, Lynch had actually received a **ten-year** stock option exercise period. Because Lynch was granted a longer stock option exercise period, Lynch was able to, and did, exercise his options in 2021, cashing out his options for around $2.5 million. Plaintiff is informed and believes, and thereon alleges, that defendants were aware at the time of Plaintiff's signing of the Separation Agreement that the Separation Agreement offered to Plaintiff had a shorter option exercise period than the period in the Lynch Agreement and intentionally failed to disclose this material fact to Plaintiff.

## FIRST CAUSE OF ACTION

**(Fraudulent Misrepresentation Against Defendants PresenceLearning, Inc., Brian Rich, Catalyst Investors, and Does 1 through 10)**

24. Plaintiff realleges and incorporates all preceding paragraphs herein by reference.

25. Presence, Rich, Catalyst, and Does 1 through 10 made material misrepresentations

of fact to Plaintiff and concealed important material information from Plaintiff throughout the course of the parties' business dealings. This was part of a deliberate and orchestrated scheme by defendants to minimize external concerns about Presence, while also indulging Rich's frequently displayed anger towards Plaintiff. The misrepresentations and concealments giving rise to this cause of action are set forth in detail above and include, but are not limited to the following:

- Defendants intentionally misrepresented to Plaintiff that the Separation Agreement terms offered to Plaintiff had the same terms as the separation agreement that Presence had previously entered into with Presence's other co-founder, Lynch, including a 2-year extension to exercise stock options.

- Defendants intentionally misrepresented to Plaintiff that Lynch got the same 2-year extension to exercise his stock options that was offered to Plaintiff, when in fact, Lynch got a 10-year extension to exercise his stock options.

- Defendants concealed the fact that Lynch got a longer extension to exercise his stock options.

26. At the time that such representations and concealments were made by Presence, Rich, Catalyst, and Does 1 through 10, Plaintiff was ignorant of the falsity of Presence, Rich, Catalyst, and Does 1 through 10's representations and concealments and believed them to be true. Plaintiff did not know, nor should he have reasonably known, that the representations were false or that material facts had been concealed by Presence, Rich, Catalyst, and Does 1 through 10.

27. At the time that such representations and concealments were made by Presence, Rich, Catalyst, and Does 1 through 10 ,Plaintiff is informed and believes and on that basis alleges that Presence, Rich, Catalyst, and Does 1 through 10 knew or should have known that the above representations and concealments were false, that the concealments of fact were material, and that Plaintiff would rely upon them.

28. Plaintiff is informed and believes and on that basis alleges that Presence, Rich, Catalyst, and Does 1 through 10 made these representations and concealments with the intent to induce Plaintiff to enter into the Separation Agreement and further, to prevent Plaintiff from seeking reformation of the Separation Agreement and demanding the same exercise extension that Lynch received. Presence, Rich, Catalyst, and Does 1 through 10 intended that Plaintiff rely on the aforementioned representations and knew that Plaintiff would reasonably rely on said misrepresentations.

29. Plaintiff justifiably, reasonably, and detrimentally relied on the material misrepresentations and concealments of fact by Presence, Rich, Catalyst, and Does 1 through 10. Presence, Rich, Catalyst, and Does 1 through 10's misrepresentations and concealments were a substantial factor in inducing Plaintiff's decision to sign his Separation Agreement. Had Plaintiff known that Presence, Rich, Catalyst, and Does 1 through 10's representations were false and concealments of fact were material, Plaintiff would not have taken this action. Plaintiff's reliance on Presence, Rich, Catalyst, and Does 1 through 10's representations was justified because they had access to Lynch's separation agreement and Plaintiff did not.

30. Plaintiff has been significantly harmed by Presence, Rich, Catalyst, and Does 1 through 10's misrepresentations and concealments, and Plaintiff's reliance on Presence, Rich, Catalyst, and Does 1 through 10's misrepresentations was a substantial factor in causing Plaintiff harm.

31. As a foreseeable, direct, and proximate result of Presence, Rich, Catalyst, and Does 1 through 10's fraudulent misrepresentations and concealments, Plaintiff has been damaged in an amount not less than $2.5 million, plus attorneys' fees, costs, and interest, according to proof at trial.

32. In acting as herein alleged, Presence, Rich, Catalyst, and Does 1 through 10 acted with fraud, oppression, and malice and with the intent to cause injury to Plaintiff. The conduct of Presence, Rich, Catalyst, and Does 1 through 10 was despicable, oppressive, and in conscious disregard of the rights of Plaintiff. Accordingly, Plaintiff is entitled to recover exemplary and punitive damages from Presence, Rich, Catalyst, and Does 1 through 10, jointly and severally, in an amount sufficient to punish and make an example of Presence, Rich, Catalyst, and Does 1 through 10, which sum shall be shown according to proof at trial.

## SECOND CAUSE OF ACTION

**(Negligent Misrepresentation Against Defendants PresenceLearning, Inc., Brian Rich, Catalyst Investors, and Does 1 through 10)**

33. Plaintiff realleges and incorporates all preceding paragraphs herein by reference.

34. Presence, Rich, Catalyst, and Does 1 through 10 made material misrepresentations of fact to Plaintiff throughout the course of the parties' business dealings. The misrepresentations

giving rise to this cause of action are set forth in detail above and include, but are not limited to the following:

- Defendants misrepresented to Plaintiff that the Separation Agreement terms offered to Plaintiff had the same terms as the separation agreement that Presence had previously entered into with Presence's other co-founder, Lynch, including a 2-year extension to exercise stock options.
- Defendants misrepresented to Plaintiff that Lynch got the same 2-year extension to exercise his stock options that was offered to Plaintiff, when in fact, Lynch got a 10-year extension to exercise his stock options.

35. At the time that such representations and concealments were made by Presence, Rich, Catalyst, and Does 1 through 10, Plaintiff was ignorant of the falsity of Presence, Rich, Catalyst, and Does 1 through 10's representations and concealments and believed them to be true. Plaintiff did not know, nor should he have reasonably known, that the representations were false.

36. At the time that such representations were made by Presence, Rich, Catalyst, and Does 1 through 10, Plaintiff is informed and believes and on that basis alleges that Presence, Rich, Catalyst, and Does 1 through 10 knew, or should have known that these representations were false, and that Plaintiff would rely upon them.

37. Alternatively, even if Presence, Rich, Catalyst, and Does 1 through 10 honestly believed that the representation was true, Presence, Rich, Catalyst, and Does 1 through 10 had no reasonable grounds for believing the representation was true when they made it.

38. Plaintiff justifiably, reasonably, and detrimentally relied on the material misrepresentations by Presence, Rich, Catalyst, and Does 1 through 10.  Presence, Rich, Catalyst, and Does 1 through 10's misrepresentations were a substantial factor in inducing Plaintiff's decision to sign his Separation Agreement. Had Plaintiff known that Presence, Rich, Catalyst, and Does 1 through 10's representations were false, Plaintiff would not have taken this action. Plaintiff's reliance on Presence, Rich, Catalyst, and Does 1 through 10's representations was justified because they had access to Lynch's separation agreement and Plaintiff did not.

39. Plaintiff has been significantly harmed by Presence, Rich, Catalyst, and Does 1 through 10's misrepresentations and concealments, and Plaintiff's reliance on Presence, Rich Catalyst, and Does 1 through 10's misrepresentations was a substantial factor in causing Plaintiff

harm.

40. As a foreseeable, direct and proximate result of Presence, Rich, Catalyst, and Does 1 through 10's negligent misrepresentations, Plaintiff has been damaged in an amount not less than $2.5 million, plus attorneys' fees, costs, and interest, according to proof at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment jointly and severally against defendants PresenceLearning, Inc., Brian Rich, Catalyst, and Does 1 through 10, inclusive, as follows:

1. For compensatory damages, including general, actual, economic, consequential, emotional distress, and special damages, in an amount to be proven at trial;

2. For exemplary and punitive damages based on defendants' knowing, willful, intentional, and malicious conduct in an amount to be proven at trial;

3. For pre-judgment and post-judgment interest on the damages, according to proof;

4. For attorneys' fees pursuant to agreement or statute, according to proof;

5. For costs of suit and expenses; and

6. For such other relief as may be just and proper.

DATED: May 9, 2023            Nevers, Palazzo, Packard,
                              Wildermuth & Wynner, PC


                              By:   /s/ Ashlei M. Vargas
                                    _____
                                    Sharlene D. Lee
                                    Ashlei M. Vargas
                                    Attorneys for Plaintiff Clay Whitehead

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and Civil L.R. 3-6, Plaintiff Clay Whitehead hereby demands a trial by jury of any and all issues triable of right by a jury pursuant to the Seventh Amendment to the United States Constitution or as given by a statute of the United States.

DATED:   May 9, 2023

Nevers, Palazzo, Packard,
Wildermuth & Wynner, PC

By: /s/ Ashlei M. Vargas
Sharlene D. Lee
Ashlei M. Vargas
Attorneys for Plaintiff Clay Whitehead

W:\Working\23619\01\W0560938.DOCX v6