**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **CLAY WHITEHEAD**, | **Case No.: 4:23-cv-02247-YGR** |
| Plaintiff, | **ORDER GRANTING SUMMARY JUDGMENT** |
| v. | Re: Dkt. No. 65 |
| **PRESENCELEARNING, INC.** *et al.*, | |
| Defendants. | |

Plaintiff Clay Whitehead brings this suit against defendants PresenceLearning, Inc., Brian Rich, and Catalyst Investors, L.P. based on the negotiations of Whitehead's separation agreement with the Company. Plaintiff alleges two claims: (1) fraudulent misrepresentation (Count One) and (2) negligent misrepresentation (Count Two).

Pending before the Court is defendants' Motion for Summary Judgment ("MSJ") on the grounds that plaintiff's claims (a) are time barred and (b) fail as a matter of law. (Dkt. No. 65.) Having carefully considered the parties' briefing, the admissible evidence, the record in this case, and upon further consideration after oral argument which occurred on July 29, 2025, defendants' motion for summary judgment is hereby **GRANTED**.

## I.    BACKGROUND

Unless otherwise stated, the following facts are undisputed:[1]

---

[1] These facts are derived from Defendant's Separate Statement of Undisputed Material Facts in Support of Defendant's Motion for Summary Judgment ("DSF") (Dkt. No. 65-1) and plaintiff's response to the DSF ("PSF") (Dkt. No. 74-1). The Court identifies with an "asterisk" those instances where a party provided argument rather than evidence suggesting a genuine dispute.

United States District Court
Northern District of California

United States District Court
Northern District of California

Plaintiff Clay Whitehead served as co-CEO of defendant company PresenceLearning ("the Company"), along with Jack Lynch from 2010 to 2017.  (PSF, Facts 3 & 28.)  Lynch departed in 2017, after which time Whitehead continued in his role as CEO until 2018.  (PSF, Fact 55.)  The Company did not perform well under their joint leadership, and it is undisputed that throughout the time Whitehead worked for the Company, there were concerns that the Company might not survive.  (PSF, Fact 17.)  In 2015, defendant Catalyst Investors ("Catalyst") invested in the Company and placed a member on the Board of Directors.  (PSF, Fact 7.)  Defendant Brian Rich is Catalyst's managing partner and founder.  (PSF, Fact 8.)

A.    Lynch Agreement Negotiation

When Lynch chose to leave the Company in 2017, Lynch negotiated a separation agreement (the "Lynch Agreement") with the Company that included a 10-year extension to exercise his stock options.  (PSF, Fact 35.)  The Company's counsel at Latham & Watkins LLP worked on the agreement.  (PSF, Fact 113.)  Plaintiff was involved in negotiating the Lynch Agreement, signed the agreement as representative of the Company, and had access to the agreement during the remainder of his tenure as CEO.  Brian Rich was not involved in negotiating the Lynch Agreement. (PSF, Facts 30-35*; 38*-41.)  Plaintiff disputes that he read the terms of the Lynch Agreement, noting that although he reviewed it with the Company's counsel, he only read parts.  (PSF, Fact 36.)

On July 11, 2017, plaintiff sent an email to the Company's Board of Directors attaching drafts of the Lynch Agreement and a letter from Lynch to plaintiff outlining the terms included, including the 10-year extension.  Plaintiff wrote in the email: "The equity and severance terms are within market based on the comps we reviewed. We persuaded Jack to modify / drop some of his asks, including a 12-month severance, mutual release and the chairman title."  (PSF, Fact 109*.)

United States District Court
Northern District of California

### B.      Whitehead Agreement Negotiation

On October 11, 2018, the Company informed plaintiff that he would be terminated effective immediately.  (PSF, Fact 55.)  That same day, they terminated his access to the Company systems and records, including his email account.  (PSF, Fact 58*.)  Plaintiff then received a draft of a separation agreement (the "Whitehead Agreement") that contained a two-year term extension to exercise his stock options.  (PSF, Fact 61.)  Plaintiff negotiated this agreement with Brian Rich in his capacity as a board member.    (PSF, Fact 67.)  Plaintiff stated in his deposition that he had five to ten conversations with Rich during the negotiations in which Rich said the proposed Whitehead Agreement was based on the Lynch Agreement.    (PSF, Fact 151.)

In an email exchange between the two, on October 30, 2018, Rich wrote that he was surprised by plaintiff's multiple requests to change the draft agreement because "[o]ur proposal was based on Jack's agreement."  (PSF, Fact 66*).  Rich informed Whitehead that he would recommend, "a non-negotiable separation agreement that includes 9 months of base salary, 9 months of COBRA and a 2-year exercise extension largely consistent with what you and the Board agreed to with Jack."  (*Id.*)

Defendants claim that Rich did not read the Lynch Agreement, did not draft the Whitehead Agreement, and his understanding at the time was that the economic terms of the two were similar. Whitehead disputes this, noting that the Company's counsel sent Rich a copy of both agreements and that Rich stated in his deposition that he did not recall if he had opened or read them.    (PSF, Fact 92.)

Plaintiff no longer had access to the Lynch Agreement during negotiations of his own agreement because the Company cut off his access to Company records and email.  (PSF, Facts 40, 58*, 149.)  Plaintiff admits that (i) he did not ask to review the Lynch Agreement during the

negotiation of his own separation agreement (PSF, Fact 91) and (ii) he did not contact Lynch to ask about the terms of his agreement (PSF, Fact 83).

In a November 15, 2018 email from plaintiff to Rich, plaintiff wrote that Lynch's "agreement is much more generous" on certain terms.  (PSF, Fact 86.)

Plaintiff signed the Whitehead Agreement on January 25, 2019.  (PSF, Fact 84.)

### C.    Stock Exercise Event

In November 2021, the Company sent an email to plaintiff, Lynch, and others conveying an announcement of the Company's planned sale and relevant stockholder information.  (PSF, Facts 139, 140.)  Soon thereafter, plaintiff learned from Lynch that Lynch received substantially more money as a result of the sale.  (*Id.*)  Lynch's option term extended for ten years, while plaintiff's only extended for two years.  (PSF, Facts 62, 108*.)

Plaintiff filed this action on May 9, 2023.

### II.    LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party.  *Id.*  In deciding if a dispute is genuine, the court must view the inferences reasonably drawn from the materials in the record in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986), and "may not weigh the evidence or make credibility determinations," *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008).  If a court finds that

United States District Court
Northern District of California

United States District Court
Northern District of California

there is no genuine dispute of material fact as to only a single claim or defense or as to part of a claim or defense, it may enter partial summary judgment.  Rule 56(a).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish the existence of material disputes of fact that may affect the outcome of the case under the governing substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment."  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir.1996).  Indeed, it is not the duty of the district court "to scour the record in search of a genuine issue of triable fact."  *Id.*  "A mere scintilla of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some significant probative evidence tending to support the complaint."  *Summers v. Teichert & Son, Inc.,* 127 F.3d 1150, 1152 (9th Cir.1997) (citation and internal quotation marks omitted).  If the non-moving party fails to make this showing, the moving party is entitled to summary judgment.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986).

When deciding a summary judgment motion, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor.  *Anderson*, 477 U.S. at 255.

## III.   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### A.  Statutes of Limitations

The statute of limitations for a fraud claim under California law is three years. Cal. Civ. Proc. Code § 338(d).  The statute of limitations for a negligent misrepresentation claim is two years. Cal. Civ. Proc. Code § 339.

United States District Court
Northern District of California

The discovery rule tolls the statute of limitations "until the plaintiff discovers, or has reason to discover, the cause of action." *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (1999).  A plaintiff has reason to discover the wrong where it "at least suspects . . . that someone has done something wrong" to the plaintiff.  *Id.* at 397-8 (cleaned up).  In this context "wrong is being used, not in any technical sense, but rather in accordance with its "lay understanding," or that a plaintiff "has reason to discover the cause of action when he has reason at least to suspect a factual basis for its elements." *Id.*  That is, a plaintiff does not need actual knowledge of the wrong; inquiry notice is sufficient.  The plaintiff has the burden to show it is entitled to application of the rule by showing "(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005).  Although the resolution of a statute of limitations defense is typically a factual question for the trier of fact, the limitations issue may be resolved as a matter of law.  *See Hip Hop Beverage Corporation v. Michaux*, 729 F. App'x 599, 600 (9th Cir. 2018) (affirming grant of dismissal with prejudice for failing to provide specificity necessary to invoke the delayed discovery rule).

Defendants contend that plaintiff's claims are time barred because the alleged misrepresentation was made during the negotiations for his separation agreement, which he signed on January 25, 2019, more than three years before he filed his claim in 2023.  In response, plaintiff argues that the statute of limitations should be tolled by the discovery rule until 2021, when he first discovered that defendants had misrepresented the option term in the Lynch Agreement.

Defendants counter that plaintiff (1) was aware of the Lynch Agreement terms, having been involved in negotiating the Lynch Agreement and signed the contract as representative of the Company; (2) failed to make reasonable efforts to determine the Lynch terms, including by failing to contact Lynch or ask for a copy of the Lynch Agreement; and (3) was on notice to question

Rich's representations at the time, because his emails during the negotiation of the Whitehead Agreement show that he believed Rich was not being candid and that the Lynch Agreement was "much more generous." (PSF, Fact 86). Plaintiff disagrees, asserting he did not have access to the Lynch Agreement when his own separation agreement (and the extension term on the options) was under discussion.

No one disputes that the claim is barred if the discovery rule does not toll the statute. Thus, and relevant here, plaintiff bears the burden to show an inability to have made the discovery of his claim earlier despite reasonable diligence.

It is undisputed that plaintiff was familiar with the Lynch terms at the time of the Lynch negotiations, including the equity terms, which he described to the Board at the time as "within market." (PSF, Fact 109*.) Plaintiff argues that his duty to "conduct a reasonable investigation" to determine injury did not arise until he became aware of the injury – which was in 2021.

Plaintiff's position does not persuade. The query is not limited to the issue of the "injury," rather the discovery rule relates to the claim overall. Here, the question hinges on plaintiff's knowledge or discovery of the term of the options period. In terms of plaintiff's information, this particular term was actually negotiated, i.e. the parties exchanged emails with respect to whether the agreement should contain a four-year term (plaintiff's position) versus a two-year term (the Company' position). Plaintiff never suggested anything close to a ten-year term. Now, the claim rests on whether he should have been given a ten-year term like Lynch.

As noted, email communications between plaintiff and the Company during their negotiations demonstrate that plaintiff believed the Company's initial draft agreement did not exactly match the terms of the Lynch Agreement. Plaintiff does not dispute that on November 15,

United States District Court
Northern District of California

2018, he pushed back on the Company's proposed terms noting that the Lynch Agreement was "much more generous" on various terms.  (PSF, Fact 86.)

Despite believing the two agreements differed, plaintiff did not engage in reasonable diligence to discover Lynch's exact option term, which ultimately led to the alleged injury here. Although he no longer had direct access to the Lynch Agreement, plaintiff made no effort to obtain it.  Plaintiff disputes defendants' claim that he "was in regular contact with Lynch," including the period during which he negotiated his own separation agreement.  (PSF, Fact 90.)  However, plaintiff does not deny that he made no attempt to contact Lynch to inquire about the terms of the agreement.  (PSF, Fact 83.)  Worse, he never asked Rich or anyone else at the Company at that time for a copy of the Lynch Agreement.  (PSF, Fact 91.)

Plaintiff's claims rest entirely upon his assertion that he accepted the terms of his separation agreement due to the Company's representation that the terms were based upon the Lynch Agreement, and in particular, a ten-year option term.  Assuming, *arguendo*, that the representation was inaccurate, plaintiff was nonetheless on notice.  Even if plaintiff did not know the Lynch terms at the time of the negotiation of his own separation agreement because he had forgotten them, he was on notice that the proposed terms may differ from the Lynch Agreement and that those differences may be disadvantageous to him.  Plaintiff did nothing to confirm the exact terms of the Lynch Agreement.  Thus, the Court finds that plaintiff failed to exercise "reasonable diligence" to determine the Lynch terms and due to this failure, plaintiff is not entitled to application of the discovery rule.

Given the discovery rule does not apply, plaintiff's claims are time barred. Defendants' Motion for Summary Judgment is **GRANTED**.

United States District Court
Northern District of California

**B. Substantive Claims for Intentional and Negligent Misrepresentation**

   *1. Intentional Misrepresentation*

  The elements for intentional misrepresentation are identical to those for fraud. *See Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 230–31 (2013). The elements of fraud are: (1) a material misrepresentation (or omission), (2) knowledge of falsity, (3) an intent to defraud, (4) justifiable reliance, and (5) resulting damages. *Lazar v. Super. Ct.*, 12 Cal. 4th 631, 638 (1996).

  With respect to the third element, a plaintiff must show there was intent to induce reliance in order to show intent to defraud. *Ohio Six Ltd. v. Motel 6 Operating L.P.*, 2012 WL 12886208, at *15 (C.D. Cal. 2012) ("Under CA law, a defendant's intent to induce plaintiffs to alter their position can be inferred from the fact that he made the representations with knowledge that plaintiffs would act in reliance on them.'") (quoting *Gagne v. Bertran*, 43 Cal.2d 481 (1954)). With respect to the fourth element, the reasonableness of justifiable reliance is "ordinarily a question of fact" unless as a matter of law "reasonable minds can come to only one conclusion based on the facts." *Guido v. Koopman*, 1 Cal.App.4th 837, (Ct. App. 1991). Generally, "fraudulent intent is an issue for the trier of fact to decide." *Beckwith v. Dahl*, 205 Cal. App. 4th 1039, 1062 (cleaned up).

  Defendants contend there was no misrepresentation because Rich's representation that the Whitehead Agreement was based on the Lynch Agreement was accurate. The Court agrees. In an October 30, 2018 email, Rich stated that the terms of plaintiff's agreement were "largely consistent" with the Lynch Agreement. (PSF, Fact 66*.) Plaintiff alleges that Rich told him multiple times that the draft Whitehead Agreement was "based on" the Lynch Agreement. (PSF, Fact 151.) By definition, whether an agreement is "based upon" or "largely consistent" with a past agreement does not mean or imply that the two agreements are identical.

United States District Court
Northern District of California

The Court has reviewed the final Lynch Agreement and the draft agreement Whitehead received on October 12, 2018 date. (*Compare* Whitehead Depo., Ex. 3 *with* Ex. 4.)  There is substantial overlap in the language of the two contracts.  Importantly, the two agreements are the same or similar with regards to various terms plaintiff negotiated, including: both plaintiff and Lynch were paid their salaries for nine months after their employment ended; they were both eligible for bonuses during that time; and they were both given an extension of the term to exercise their options after termination of their employment.  (*Id.*)

Furthermore, the exercise of the option term was not material.  Plaintiff argues materiality based on the fact that he actively negotiated the term.  The Court is unconvinced.  Plaintiff's negotiation of the term consists of a single request to change the two-year extension to a four-year extension, which was conveyed as one of several redline edits in a draft sent to Rich on October 29, 2018. (PSF, Fact 74*.)  Once his proposal was rejected, plaintiff did not make any further effort to negotiate the term. (PSF, Fact 96.)  In fact, plaintiff never mentioned the term again in subsequent email communications negotiating the agreement.  (PSF, Facts 69*, 96.)  In a November 10, 2018 email, plaintiff told Rich that his negotiations were focused on several non-economic terms "because I no longer see any value in the common stock."  (PSF, Fact 75.)

Defendants argue that Rich could not have had knowledge of the statement's alleged falsity because Rich did not read the Lynch Agreement and was therefore unaware of all of its contents. Plaintiff counters that Rich received copies of both the final Lynch Agreement and a draft of the Whitehead Agreement and therefore must have been aware of the 10-year extension because "he was vetting every step in the negotiations with counsel[.]" (Oppo. at 16.)  Whether Rich had knowledge of the precise terms of each agreement may be disputed, but it is irrelevant because Rich did not make a material misrepresentation.

10

United States District Court
Northern District of California

Defendants argue plaintiff cannot satisfy the element of intent because "given [] the value of the stock and the financial condition of the company, Rich could not have, and did not, believe that the stock would be worth what it was in 2021." (MSJ at 16.)  Indeed, plaintiff admits that he did not see any value in the common stock at the time of the Whitehead negotiations.  (PSF, Fact 75; *see also* PSF, Fact 76 ("Plaintiff stated that he believed that his equity in PresenceLearning was worthless.").)

Plaintiff argues intent is demonstrated by "an internal presentation to Catalyst in which they proposed that Presence's unallocated option pool be increased from 2.0% to 7.0% fully diluted" which plaintiff suggests shows the Board was considering "Whitehead's status as a major Presence shareholder" as a potential barrier to their goal of increasing the unallocated option pool.  (Oppo. at 3.)  The Court is not persuaded.  It is undisputed that none of the parties expected the coming change in the Company's fortune at the time plaintiff was negotiating his agreement.[2]  Therefore, there is only one possible conclusion to be drawn: defendants had no intent to fraudulently induce plaintiff to agree to a shorter exercise term.

Even viewing the evidence and the inferences drawn therefrom in the light most favorable to plaintiff, no reasonable jury could find that Rich intentionally misrepresented the terms of the Whitehead Agreement.

### 2.    *Negligent Misrepresentation*

Unlike fraud, a claim for negligent misrepresentation "does not require knowledge of falsity, but instead requires a misrepresentation of fact by a person who has no reasonable grounds for believing it to be true." *Chapman v. Skype Inc.*, 220 CalApp4th 217, 230–31 (2013).  The

---

[2] When plaintiff was terminated in 2018, plaintiff, Rich, and the Board all believed the growth of the Company was disappointing.  (PSF, Facts 56-57.)  Years later, the COVID-19 pandemic resulted in the Company's unexpected, rapid growth.  (PSF, Facts 75, 76, 98, 101, 102.)

remaining elements are identical to fraud and therefore follow the discussion above. As found above, there was no material misrepresentation. Therefore, this claim also fails.

Thus, even if plaintiff's claims were not precluded by the statutes of limitations, they would fail on the merits.

## IV.    CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** defendants' Motion for Summary Judgment. Plaintiff received the benefit of his bargain: nothing more, nothing less. That the option period became valuable years later due to the COVID-19 pandemic does not mean that plaintiff can somehow assert a tort claim based on a generic reference to someone else's separation agreement during the contract negotiations.

Within five business days, the parties shall provide the Court with a form of judgment approved as to form.

This terminates Docket No. 65.

**IT IS SO ORDERED**.

Date:    August 12, 2025

_____

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

United States District Court
Northern District of California

12